OVERSEERS OF THE POOR OF KINGWOOD v. OVERSEERS OF THE POOR OF BETHLEHEM.

Where an indenture of apprenticeship had been traced into the hands and among the papers of the apprentice, long after his time had expired, and after he had been married and had a family, and where his wife had testified, that she knew not what had become of the few papers he once had, that they were either lost or

Kingwood *v.* Bethlehem.

destroyed, it was held that these circumstances would excuse its non-production, and authorize secondary evidence of its contents.

In the absence of the instrumental witness, and of proof of the hand writing of the witnesses and parties, the next best evidence is the acknowledgment of the parties, of its being their deed.

If an indenture of apprenticeship is executed by the apprentice without proving the execution by the master, it is a valid binding to service, as an apprentice.

A service may be performed by an apprentice, by the consent of his master, with another man, so as to gain a settlement. A formal assignment of the indenture in writing, is not necessary, the assent of the original master is all that the law requires.

If the sessions have any legal evidence of the fact, this court will never enquire into the weight of it.

An order of removal was made by two justices of the peace of the county of Hunterdon, removing Lydia Hull, and her five children from the township of Bethlehem, to the township of Kingwood in that county. The overseer of the poor of Kingwood appealed from this order to the Quarter Sessions of the peace of that county. After an examination of witnesses, whose testimony is detailed in the opinion of Justice Ford, the court of Quarter Sessions affirmed the order of removal made by the justices, and adjudged the last legal settlement of the paupers to be in the township of Kingwood. The proceedings were removed into this court by certiorari.

*Wall* for the plaintiffs in certiorari contended, that the burden of proof was on the township of Bethlehem. Lydia Hull had never resided in Kingwood and she could acquire a settlement in that township only by the service of her husband, David Hull, under an indenture of apprenticeship ; such an instrument had not been produced. Its existence was attempted to be proved only by confessions. These were not admissible, as the opposite party had failed to prove, that the parties, who made them, were dead.

2. It was not competent to prove the existence of the indenture by parol.

3. These declarations were not competent, because it was proved, that the indenture had been in the possession of John Hull.

4. But if competent, these declarations do not prove the existence of a lawful indenture ; not such a one, as would create a settlement.

5. There was no service under the indenture, none with the original master. If any, it was with the person to whom it is said the indenture was assigned. The assignment is then all important and ought to have been under seal and proved. He cited 1 *Penn.* 422; 3 *Hals.* 251; *Lewin on sett.* 310; 6 *T. R.* 236, 14; *English Com. Law Rep.* 102; 11 *ibid* 394.

*Saxton* for the defendants —The paupers Lydia Hull and her children derive their settlement from David Hull. That he served one year as an apprentice with his brother, John Hull, in Kingwood, was sufficiently proved by the evidence adduced before the sessions. The next enquiry is, was this service performed under an indenture so as to gain a settlement.

The indenture itself is the best evidence, but if that cannot be had, the best evidence that can be had, must be admitted, 3 *Bl. Com.* 368. The indenture was not produced, but was sufficiently accounted for by proof, that it could not be found among the papers of David Hull, and there was no other person, who could be presumed to have it in possession. Reasonable enquiry after it had been made. From the circumstances that appeared, it must be presumed to have been lost or destroyed. And secondary evidence was admissible, 16 *Com. Law Rep.* 259; 6 *Dow & Ry. Rep.* 147; 4 *Maul. & Sel. Rep.* 48. The production of the subscribing witnesses was excused, by proof, that they were unknown, and if known, from the age of the instrument, which must have been executed upwards of thirty years ago, it would have been unnecessary to examine them, *Lewin on sett.* 317.—In such case the court would not only presume the due execution of the indenture, but other legal requisites, such as its being stamped, &c. 7 *East.* 45. When due diligence has been used and the indenture cannot be found, proof of the admission of the indenture, by the parties interested, is competent, as secondary evidence. 4 *Dow & Ry. Rep.* 475; 1 *Com. Law Rep.* 210, and under circumstances the indenture may be presumed, *Burr. sett. Ca.* 731.

The admission of David Hull alone was sufficient, because the execution of an indenture by the apprentice only, if all that is necessary to gain a settlement, 2 *M. & S.* 338; and it is not material, whether the binding be to any or to what trade. *Arch. Pau. Laws* 44, 45.

As to the assignment of the indenture, it need not be under

seal; an actual assignment is not necessary. An apprentice serving a second master with the consent of the first, gains a settlement, 3 *T. R.* 605; and the consent of the first master may be implied from circumstances, 4 *Com. Dig.* 606.

*Attorney General* on the same side.

1. Had David Hull the husband of Lydia the pauper, a settlement in Kingwood? Did he live there under an indenture of apprenticeship? All the testimony proves, that there was a paper, purporting to be such an indenture.

2. Was it an indenture? It was so understood—it had all the essential parts of an indenture—the names, seals, stamp and usual terms, and this is all the law requires in a settlement case. *Lewin on sett.* 209, 233, 249, 252; 1 *Hals. Rep.* 176.

3. Was it a forgery? It was regarded as genuine by all parties; all acted under it and after the lapse of thirty years this court will not presume it a forgery.

4. Was it competently proved? When the enquiry is in regard to lost paper, we must look into the nature and character of the paper. An indenture of apprenticeship is liable to be lost, for no one is interested in keeping it. Its valid, legal operation, terminated thirty years ago.

5. It is said, that there was no binding to a trade. It is not necessary, that the trade should be named in the indenture. The enquiry is, was there a service? The language used in the statute is, *Rev. Laws* 35, " every person, who serves an apprenticeship." These words are satisfied by a binding without reference to the trade. *Lewin on sett.* 202, 215.

As to the assignment, it has been determined, that the only requisite is the assent of the first master to the service of the apprentice with the second master, *Lewin on sett.* 268, 276; *Burr. sett. Ca.* 442, 774.

*Wall* replied.

FORD, J. delivered the opinion of the court.

An order was made by two justices of the peace for the removal of Lydia Hull a widow, and her five children, from the township of Bethlehem to the township of Kingwood, both in the county of Hunterdon, and the order being affirmed on an appeal to the sessions, was removed into this court by certiorari. Her

settlement was derived from her late husband David Hull, deceased; and his settlement was founded on his alleged service with John Hull in Kingwood for one full year, under an indenture of apprenticeship. The indenture itself could not be produced; and its former existence and execution, its loss, its contents, and service with John Hull under it, were the contested matters. The pauper, as to the point of its existence, testified, that she once saw an indenture among her husband's papers; she could not read writing herself, but it was read to her by Jacob Haggerty, and it purported that her husband should serve as an apprentice to the blacksmith's trade with David Butler, or work with him; that he was not to go into any bad company, and was to have a freedom; she did not remember how long it said he was to stay, nor whose names were signed to it; she saw it in her husband's hands a good while before his death, but does not know what he did with it; it was gone a good while before his death; he left no executors, no administrators were appointed, and she knew of no person who had possession of any of his papers. David Butler testified that he knew John Hull; that he was a blacksmith, and that David Hull the pauper's husband worked with him in the name of an apprentice upwards of a year in Kingwood; that he applied to purchase the boy's time and offered sixty dollars for it; that John Hull produced the indenture and witness read it over in the presence of David Hull who acknowledged it to be a good indenture and that he was serving with John Hull under it, but he declined to serve with witness for the residue of the time which was about two years, and said he was not willing to be sold like a cow or a horse, having, he said been sold once or twice already. The indenture expressed David Hull's age, and that he was to serve till he should be twenty-one years old, but it did not mention any trade in the body of it that the witness remembered. It had three names and seals on the right hand, one of which was the name of David Hull, and he thinks the other two were the names of the original master and of the apprentice's father, but the witness did not know either of their hand writings, nor could he remember the original master's name. It had two names on the left hand for subscribing witnesses, but he could not recollect who they were, nor did he know their hand-writing. It had an en-

dorsement on it purporting that the original master assigned the residue of the apprentice's time to John Hull, and that John Hull was to teach him the trade of a blacksmith; and this endorsement purported to be signed with the name of the original master. The witness saw this instrument as thus related in the year 1801, and in about a month afterward John Hull ran away with a young woman and has never returned since.

. This short case presents several difficult questions, yet contains facts enough for their solution. And first, supposing that an indenture ever existed, was its loss sufficiently proved to excuse its production? That it was not sought for in the hands of the original master who had it first, amounts to no neglect or want of due diligence, for he was a person utterly unknown, and it had been traced out of his hands into the possession of John Hull. So as to its not being sought for in the hands of John Hull, for he had run away, and long after he was gone, it was known to be out of his possession, and remaining here in the hands of the apprentice. It was traced into the hands and among the papers of the apprentice long after his time had expired, and after he had been married and had a family. It was naturally to be sought for after his death in the hands of his executor, administrators or widow, but he had no executors or administrators, and his widow knew not what had become of the few papers he once had; they were either lost or destroyed. From its final disappearance a presumption legally arises that it had been destroyed as a useless thing by the apprentice himself; but if not destroyed, its loss was sufficiently proved to excuse its non production and authorize secondary evidence of its contents

Secondly. Was the indenture proved to have been legally executed? It was to be done by the best evidence that the nature of the case would admit of. The first and best evidence is the instrumental witnesses, but the not calling them was excused by the nature of the case, for the knowledge of them had been lost with the indenture itself. The next best evidence was proof of the hand writings of the witnesses and parties, but these were utterly excluded by the nature of the case, for the instrument was lost and the hand-writings could not be shewn.

The next best evidence was the acknowledgment of the parties of its being their deed, and David Butler sufficiently proved the acknowledgment of the apprentice, who on seeing the instrument and hearing it read, declared it to be a good indenture and that he was serving under it; but he heard no acknowledgment of the original master or father, and as to them the indenture was wholly unproved and must be taken as if they had never signed it. Is then an indenture valid in law, that is signed by the apprentice only ? In the case of *Gybert* v. *Fletcher, Cro. Car.* 179, all the court resolved that an infant may voluntarily bind himself an apprentice, for it is for his benefit, and if he misbehave himself, the master may correct him in his service, or complain to a justice of the peace, and have him punished. 4 *Bac. title Master & Servant, B.* An infant cannot be sued upon the covenants in his indenture in any case, and therefore the insertion of covenants on his part is useless, unless some person is bound with him for their performance, but if he sign an indenture it will be a valid binding to service as an apprentice. 3 *Burns' Jus.* 329; 1 *Burns' Jus.* 61. "It is sufficient to prove that it was executed by the apprentice, without proving the execution by the master." 3 *Starkie's Evid.* 1323, and the cases there cited.

But the acknowledgment of the apprentice in his lifetime to David Butler, is argued not to be competent evidence that he signed the indenture. Where primary evidence of the execution of an instrument is shewn by the nature of the case to be unattainable and impossible, and an acknowledgment of the instrument by him who made it, becomes the best that the nature of the case admits of, it is not only competent, but very persuasive evidence of the genuineness of the deed, and it has never been rejected in any case under these limitations. In the case of *Abbot, assignee of Farr,* a bankrupt, against *Plumbe,* proof was required of a bond that the bankrupt had given to a petitioning creditor, and Lord Mansfield allowed a witness to swear that the bankrupt acknowledged to him that he owed the debt; and the verdict was afterward set aside only because there was better evidence in the power of the party; for there was a subscribing witness and no proof that he could not have been procured.

Kingwood *v.* Bethlehem.

If a person acknowledges an instrument, his acknowledgment is enough for a third person to subscribe it as a witness without seeing him sign it, *Munns* v. *Dupont*, 3 *Wash. C. C. Rep.* 42. Acknowledgment is all the evidence upon which a deed is recorded; it is therefore legal evidence when that of a superior kind appears by the nature of the case itself not to be attainable.

Thirdly. That the service of the apprentice with John Hull, does not appear to have been authorized by the original master, inasmuch as there is no proof of his having subscribed the assignment. It is true that the endorsement on the indenture was not proved to have been signed by the original master, nor was a formal assignment necessary to be made out in writing. He serves his master under the indenture when he serves another man by his master's consent. This is established by a multitude of cases. In the case of *St. Olaves'* v. *All Hallows*, 3 *Burns' Jus.* 333, "A person is bound apprentice to his master who lived in St. Olaves; afterwards, the apprentice by his master's *consent* lives with another person in All Hallows. By the court. He gains a settlement in the last place; for a person may serve his master in another parish or place; and although he serves another man, yet it is by *consent* of his master, and the benefit accrues to his master." *Idem.* 334, 335, 6, 7. The consent of the original master to this service with John Hull is all that the law requires, and such consent may be shewn by direct proofs; or by circumstantial evidence which may be equally convincing. The circumstances in proof of consent are very strong and all look one way. The original master parted voluntarily with the indenture which he certainly would not have done if he meant to keep the boy's services at home. Furthermore, he delivered the indenture over to John Hull, for we find that it passed into Hull's hands, and we may not presume without proof, that he obtained it dishonestly or fraudulently, for dishonesty and fraud are never to be taken by presumption. By authority of the indenture John Hull controlled the boy as an apprentice, whose belief of its being with the assent of his master was fairly indicated by his submission to the change, and by even declaring that he was *sold* like a horse or a cow, and he would not be sold again. Had the original master's consent

have been wanting, he must have known where his apprentice was ; it was not many miles distant ; he worked there in a public shop for all Hull's customers fourteen months, and at the forks of a road, one of which led to a grist mill, the most frequented of all kinds of factories ; yet the original master never reclaimed the indenture, the apprentice or his services. These circumstances led the Sessions to infer the master's consent ; and if the Sessions had *any* legal evidence of the fact, we never enquire into the *weight* of it, but take it as they did. We do not allow them to settle the *law* for us, but we never dispute the facts they find, nor weigh the circumstances over again on certiorari. On the whole I think there was legal evidence of the existence, loss, and contents of a valid indenture of apprenticeship, and of a service under it with John Hull in the township of Kingwood for one full year, and that the order of the Sessions must be affirmed.

DRAKE, J. concurred.

Let the order of the Sessions be affirmed.

CITED in *Overseers Orange* v. *Overseers Springfield,* 2 *Gr.* 323.